IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Southern Fidelity Managing Agency,
LLC, et al.,

  Plaintiff,

    vs.           Case No. 12-2702-JTM

Citizens Bank & Trust Company,

  Defendant.


Southern Fidelity Managing Agency,
LLC, et al.,

  Plaintiff,

    vs.           Case No. 12-2707-JTM

Citizens Bank & Trust Company,

  Defendant.


MEMORANDUM AND ORDER

These consolidated bankruptcy appeals involve a priority dispute between two creditor groups, arising from various debts and obligations of the Brooke Corporation group affiliated with Robert D. Orr. Appellants Southern Fidelity Managing Agency, Northern Capital, and Security First Insurance Holdings (along with the Bank of Kansas

(BoK) entered into participation agreements executed in March of 2008 with Brooke Capital Advisors (BCA), in connection with BCA's earlier loan of some $12.38 million to another Brooke entity, Brooke Capital Advisors (BCC), which did business as Aleritas Capital Corporation.[1] Appellee Citizens Bank & Trust Company separately loaned some $9 million to BCC. Both groups claim an interest in the proceeds from the sale of stock in First Life America Corporation (FLAC), another Brooke-related entity.

In its Order Determining Parties' Entitlement to Proceeds of FLAC Stock (Dkt. 2), the bankruptcy court rejected Citizens' argument that BCA had not in fact extended any loan to BCC. Despite the failure to fully document the transaction, the bankruptcy court concluded that BCA had entered into a Commerical Loan Agreement, which "documented a valid debt ... in the approximate amount of $12 million." (*Id*. at 7).

The bankruptcy court made extensive factual findings as to both the Participation Agreements entered into between BCA and the Appellants and Bank of Kansas (*id*. at 7-13), as well as the the workout negotiations between Citizens, BCC, and BCA which occurred in the Spring of 2008. (*Id*. at 13-22). These general factual findings are not challenged in detail in the present appeal, and the court adopts and incorporates these findings here. Ultimately, the Brooke entities collapsed during the national financial crisis in 2008, and BCC filed for bankruptcy on October 28, 2008.

In its conclusions of law, the bankruptcy court first determined that BCA had a valid

---

[1]The participants held a total of 86.87% interest in the Note held by BCA. Northern Capital held 8.07%, Southern Fidelity 24.22%, Security First 40.4%, and BoK 14.54%.

2

security interest in the FLAC stock, which had been pledged by BCC as security for the $12 million loan. (*Id.* at 26-27). This lien was a "first lien" in the FLAC stock, in contrast to Citizens' "second lien." (*Id.* at 28).

However, the court held, Citizens' second lien in the stock was superior to that of BCA, in light of the Payment Agreement entered into by Citizens, BCC, and BCA during the workout negotiations. (*Id.* at 28-30). Under the Payment Agreement, BCA agreed to subordinate its otherwise superior interest in the FLAC stock.

As to the defendants in the bankruptcy action, the court distinguished between the Appellants' Participation Certificates, and the Participation Agreement between BCA and BoK. (*Id.* at 31-39). The former, the court held, was a true participation agreement, and thus BCA could not contractually subordinate BoK's lien interest; BoK's interest remained superior to that of Citizens. The court held that, in contrast, the Participation Certifications between BCA and the Appellants were not true participation agreements, and the court recharacterized these transactions as disguised loans to BCA. As a result, the court held, the Appellants "had at most unperfected security interests in the FLAC stock." (*Id.* at 35). In light of this lack of perfection, the court held that the validity of BCA's purported subordination of the Appellant's lien interests was moot. The court held that Citizens held a superior claim to the FLAC proceeds, except for the 14.54% interest held by BoK.

On appeal, the Appellants presented several arguments. First, they contended that the bankruptcy court erred because it failed to recognize that, recharacterization or not, they held a perfected security interest in the FLAC stock by virtue of BCA's assignment and

3

the operation of K.S.A. § 84-9-310(c). Second, they argued that the bankruptcy court erred when it decided that BCA could agree to subordinate its first lien without their consent. Third, they argued that the court erred in recharacterizing the participation agreements, based upon insubstantial evidence and ignoring evidence showing that they did in fact face a real risk of loss in the transaction.

In its brief as appellee, Citizens argues alternatively that the Appellants have no perfected security interest because they filed no financing statement as to the FLAC stock, did not have direct possession of it themselves, and because BCC did not separately agree to a security agreement with the Appellants. (Dkt. 14, at 18-19). Alternatively, Citizens argues that as participating lenders, the Appellants had no security interest at all (*Id.* at 19). Citizens did not directly discuss or even mention K.S.A. 9-310(c).

The United States Magistrate Judge issued a Report and Recommendation determining that bankruptcy court erred in failing to apply Section 310(c), and that the statute served to perfect the Appellants' security interest in the FLAC stock. The Report rejected Citizens' argument that the Appellants held only a security interest in a security interest. It found that the Appellants had received a valid assignment of BCA's first, perfected lien interest. BCA's lien interest arose directly from the Commercial Loan Agreement between BCC and BCA, which expressly permitted assignment of the security interest.

> [A] review of the Participation Certificates shows that they provide that a security interest in the "Property" that was assigned and sold to Appellants. The Certificates describe "Property" as including a "Pledge of

4

> 100% stock of FLAC." The bankruptcy court's recharacterization of the Participation Certificates from true participation interests to loans does not change or render invalid these provisions of the Participation Certificates.
>
> Because BCA assigned its perfected security interest in the FLAC stock to Appellants under the Participation Certificates, under K.S.A. 84-9-310(c) Appellants were not required to file to continue the perfected status of the security interest against creditors of and transferees from BCC (the original debtor). The recharacterization of Appellants' Participation Certificates as loans by the bankruptcy court does not make the Kansas statute governing the assignment of perfected security interests inapplicable.
>
> As a result, under Kansas law, Appellants did not need to take additional steps to continue the already perfected security interest in the FLAC stock assigned to them by BCA, and they would have superior priority to the proceeds of the sale of the FLAC stock over that of Citizens Bank and similar to that of Bank of Kansas, whom the bankruptcy court found had a perfected security interest in the stock under its Participation Agreement.

(Dkt. 19, at 15-16).

In addition, the Report determined that the bankruptcy court erred in finding moot the issue of whether BCA could properly subordinate its superior lien. The Magistrate Judge determined the issue was not moot:

> Under the terms of the Participation Certificates, BCA could not—without the written consent of Appellants—consent to BCC's grant of a second priority security interest in the FLAC stock to Citizens Bank or subordinate its security interest in the FLAC stock. As provided in Section 12 of Appellants' Participation Certificates, BCA, as the seller of participation rights in the BCA Loan, agreed that it "will not, without [Appellants'] written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against [BCC]." Because BCA never obtained Appellants' written consent, BCA was contractually prohibited from agreeing to BCC's request to grant Citizens Bank a second priority security interest in the FLAC stock. Absent the written consent of Appellants, BCA also could not subrogate its first lien position in the proceeds to Citizens Bank's second lien in the same collateral.

(*Id.*, at 17-18).

The Report concluded that the bankruptcy court's decision should be reversed and remanded, with instructions to distribute the proceeds of the FLAC stock in a manner reflecting the superior lien interest held by the Appellants. For the reasons provided herein, the court adopts and incorporates the Report and Recommendation.

Citizens has objected to the Report, and presents four arguments why the Report should be rejected. First, it contends that the Report rests upon erroneous factual conclusions as to BCA's possession of the FLAC stock certificate. Second, it contends the Report fails to account for the recharacterization of the Appellants' participation agreements as loans to BCA. Third, it contends that the Report fails to consider that the Appellants' interest was a mere intangible, and thus not subject to Section 310(c). Fourth, it contends that even if Section 310(c) might otherwise apply, its terms and commentary indicate that it was not intended to apply in the present action. Citizens' objections do not directly address the Report's additional finding that BCA could not validly subordinate its first lien interest without the Appellants' consent.

In reviewing the decision of the bankruptcy court, the court accepts its factual determinations unless they are clearly erroneous; conclusions of law are reviewed *de novo*. *Conoco Inc. v. Styler* (*In re Peterson Distrib.*), 82 F.3d 956, 959 (10th Cir.1996). The court reviews *de novo* dispositive recommendations of the magistrate judge. Fed.R.Civ.Pr. 72(b).

The court has considered each of Citizens's arguments, and finds that they are without merit. Accordingly, the court adopts and incorporates the recommendations

advanced in the Report.

Citizens's first argument centers on the Report's observation that "[a]t some time prior to June 25, 2008, BCC delivered the FLAC stock to BCA, which perfected BCA's security interest in the stock." (Dkt. 20, at 4). Citizens contends this factual conclusion, operating as the "linchpin" of the Report's analysis, is fatally flawed because it is at variance with the bankruptcy court's actual findings. (*Id.*, at 5-6). To support this claim, Citizens repeatedly cites the same footnote from the bankruptcy court's decision.

In that footnote, the bankruptcy court observed:

> Although the evidence that BCA or someone on its behalf contemporaneously took possession of the stock is not convincing, evidence of later events establish that at the time the Debtor [BCC] filed for relief under the Bankruptcy Code, BCA's security interest was perfected by possession of the FLAC stock by an escrow agent on BCA's and Citizens' behalf.

(Dkt. 2, at 4 n. 3).

The court finds that the Report correctly construed the sequence of events surrounding the FLAC certificate, and the cited footnote, the linchpin of Citizens' argument, does not compel a contrary result.

The first clause in the footnote merely establishes that the exact date or timing of when BCA received the stock certificate was uncertain. But the exact date of this event was not essential to the Report's analysis; what was important was the sequence under which BCA received the FLAC stock certificate. As the bankruptcy court observed in its discussion of the Escrow Agreement between BCA, BCC, and Citizens (which was dated

7

June 25, 2008, but signed June 30), the Agreement indicated that BCC *had previously* given BCA a security interest in its FLAC stock. (Dkt. 2, at 20) (emphasis added). Further, the same agreement explicitly provided that accordingly "'Debtor [BCC] *had delivered* to BCA certificate number 18, representing almost 1.5 million shares of FLAC common stock.'" (*Id*.) (emphasis added).

This is consistent with the communications between Mark Ovington (counsel for Citizens) and Carl Baranowski (counsel for BCC and other Brooke companies), as related by the bankruptcy court. On June 25, 2008, as Citizens was trying to arrange its workout with BCC, Ovington asked who held the FLAC stock that BCC was promising as security. Baranowski "replied that he was holding the FLAC certificates on behalf of BCA, 'the first lienholder.'" (Dkt. 2, at 18). The next morning, Ovington asked if Citizens could hold the stock, and Baranowski told Ovington that other participants in the loan would object to such an change in possession.

Similarly, the second clause of the cited footnote fails to establish any flaw in the Report's analysis. The bankruptcy court agreed that later evidence supported the conclusion "at the time the Debtor filed for relief under the Bankruptcy Code, BCA's security interest was perfected by possession of the FLAC stock by an escrow agent." That is, when the Special Master filed the Chapter 11 petition on behalf of BCC on October 28, 2008, BCA's security interest was perfected "at the time." The footnote simply does not address when BCA first possessed the FLAC stock certificate.

That the bankruptcy court generally understood that BCA took possession of the

8

FLAC stock certificate is confirmed by its clear reference to BCA's security interest in the stock as a "first lien," in comparison to Citizens' "second lien." (Dkt. 2, at 42).

In accordance with this understanding, the bankruptcy court determined that BoK held a perfected security interest in the FLAC stock proceeds, and that this interest was superior to Citizens' interest, which had been perfected by the possession in escrow. This superior interest by BOK necessarily reflects a conclusion that BCA had perfected before Citizens. And BCA could only have perfected before Citizens if, at some point, it held possession of the FLAC certificate before it was transmitted to the escrow agent. The Report's finding that "BCC delivered the FLAC stock certificate to BCA" at some point prior to the transmittal to escrow was a fair synopsis of both the bankruptcy court's opinion and the underlying facts.

Citizens next argues that the Report errs because it considered the effect of Section 310 without also considering the effect of recharacterization. By "fail[ing] to account for the effects of recharacterization," Citizens argues, the Report's analysis is fundamentally flawed. (Dkt. 20, at 7). Citizens cites numerous cases, as part of a "large body of settled law," to assert that "upon recharacterization, the essential indicia of the recharacterized transaction are eliminated and the transaction is restructured to reflect what it actually was." (*Id*. at 8, 10). According to Citizens, the Appellants gave nothing of value for the security interest in the FLAC stock.

Citizens' argument rests on decisions involving disguised leases and insider loans, none of which are applicable here. Only a single case cited by both the bankruptcy court

9

and Citizens in its Objections involves participations recharacterized as loans. And that case, *Castle Rock Indus. Bank v. S.O.A.W. Enters.*, 32 B.R. 279, 283-86 (Bankr. W.D. Tex. 1983) simply does not address the effect of recharacterization in the context of Section 310.

In *Castle Rock*, the creditor bank contended that certain repayment rights it obtained as a result of participation agreements with the debtor-seller were outside the bankruptcy estate. The debtor-seller sold various tracts of land, with the buyers agreeing to make a portion of their payments to the bank. The bank argued that the repayment rights were not property of the seller's estate under 11 U.S.C. § 541(d), which excludes from the bankruptcy estate property which had been equitably transferred by the debtor.

The court determined that the "participations" were actually disguised loans. First, the rate of return and repayment was "incompatible with the concept of participation, and more compatible to that of a loan." 32 B.R. at 282. Second, the transaction was structured so that the bank essentially "ran no real risk," and in fact "did not look to [the sellers] for repayment. *Id.* at 282-82. Because the repayment rights were loans, § 541(d) was inapplicable.

Section 541(d) is not in issue in the present case; the sole issue is whether the Appellants held perfected security interests in the FLAC stock. Citizens argued before the bankruptcy court that "neither BCA nor any of the Defendants have an enforceable security interest in the FLAC stock" because no value was given for the BCC stock, and thus the interest did not attach under Article 9. (Dkt. 2, at 26). The court explicitly rejected Citizens' argument, finding that value was in fact given, both by BCA's general agreement to extend

credit to BCC, and by the actual advance of funds. (*Id*. at 27-28).

In furtherance of this funding, BAC specifically assigned its security interest in the FLAC stock to the Appellants, and Citizens has failed to present any authority showing that recharacterization would defeat BCA's first lien in the FLAC stock and its proceeds, which were properly assigned to the Appellants pursuant to K.S.A. 84-9-310(c). The Appellants' initial financing arrangement with BCA may have been a participation agreement or a disguised loan, but that does not affect the validity of BCA's explicit assignment of its interest in the stock to the Appellants.

Citizens argues that BCA did not actually assign its rights to the FLAC stock, but merely gave a security interests in a security interest, a mere general intangible. Such an interest cannot be perfected by possession, only by filing.

The Participation Certificate provides:

> 7. SECURITY. The Loan is secured by the following property, all of which is evidenced by executed security agreements, assignments, mortgages, deeds of trust or other instruments in favor seller: A security interest in the Property is assigned and sold to Purchaser, subject to other provisions within this Agreement.... Property description: Pledge of 100% stock of Brooke Capital Advisors, Pledge of 100% stock of First Life America Insurance Company; Pledge of 100% of contractual rights of Delta Plus Holdings, Inc.

The court rejects Citizens' argument. The terms of the Participation Agreement expressly provide that BCA assigned Appellants a security interest in the specific "Property," and this Property included the "Pledge of 100% stock of [FLAC]." All of the parties understood this to mean a security interest in the stock itself. The bankruptcy court construed this agreement the same way, finding that under the Certificates "BCA was

assigning a proportionate share of its security interest to each Purchaser." (Dkt. 2, at 9). The court finds that Citizens' argument is contrary to the plain language of the agreement, and further that it has failed to show that the bankruptcy court's interpretation of the agreement was in error.

Finally, Citizens argues that even if K.S.A. 84-9-310(c) were otherwise applicable, it would not permit the Appellants to rely on BCA's possession of the FLAC stock certificate as a means of perfection. Specifically, Citizens relies on Example 2 to the Official U.C.C. Commentary to Section 310. This example, which applies Section 310 in cases in which there are two different debtors, provides:

> Dealer creates a security interest in specific equipment in favor of Lender. After Lender perfects the security interest in the equipment by filing, Lender assigns the chattel paper (which includes the perfected security interest in Dealer's equipment) to X. The security interest in the equipment, in X's hands and without further steps on X's part, continues perfected against Dealer's transferee and creditors. However, regardless of whether Lender made the assignment to secure Lender's obligation to X or whether the assignment was an outright sale of the chattel paper, the assignment creates a security interest in the chattel paper in favor of X. Accordingly, X must take whatever steps may be required for perfection in order to be protected against Lender's transferees and creditors with respect to the chattel paper.

Citizens argues that this example is "identical to the case before this Court," (Dkt. 20, at 16), and as a result the Appellants are not exempt from the requirement of separate perfection.

The court finds that Citizens argument fails because its application of the example is flawed. While there are indeed two separate debtors (BCC and BCA), Citizens is a creditor of BCC on the basis of its $9 million loan to BCC. Accordingly, in the example cited, the "Dealer" is BCC and the "Lender" is BCA. K.S.A. 84-9-310(c) is applicable, and

12

establishes that the Appellants were perfected against Citizens by BCA's possession of the FLAC stock certificate. Having received a valid assignment of BCA's security interest, the Appellants held a perfected security interest in the stock as against BCC's creditors. As the Official Commentary to UCC Section 9-310 makes clear, the statute is applicable, since "Subsection (c) applies not only to an assignment of a security interest perfected by filing but also to an assignment of a security interest perfected by a method other than by filing, such as by control or by possession." Thus, the Appellants held a valid, perfected security interest in the FLAC stock, and the Report properly determined that that interest was superior to that of Citizens.

To summarize, the court finds that BCA validly granted a security interest in the FLAC stock, and that this interest was perfected by BCA's possession of the FLAC stock certificate. The court rejects the argument that Appellants held only a security interest in a security interest, based on a plain reading of the instruments involved. The assignment of the security interest in the FLAC stock was a separate transaction which is not eliminated or nullified by recharacterization of the participation agreements into separate loans. The Appellants therefore had a valid security interest in the FLAC stock, and this interest was perfected by the operation of K.S.A. 84-9-310(c).

IT IS SO ORDERED this 14th day of January, 2014, that the Objections of the Appellee are denied, the Report and Recommendation of the United States Magistrate Judge is hereby adopted, and the decision of the bankruptcy court is hereby reversed and remanded, with instructions to pay out proceeds from the FLAC stock to the Appellants

in the proportions set forth in this opinion.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE